UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DWAYNE BOONE, individually and on behalf of all others similarly situated, | Case No.: 22-cv-00862 |
| Plaintiff, | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| ALLPRO PARKING, LLC, ALLPRO PARKING HOLDINGS, LLC, and PREMIUM PARTNER HOLDINGS, LLC, | |
| Defendants. | |

Plaintiff Dwayne Boone ("Plaintiff" or "Mr. Boone"), individually and on behalf of all other similarly situated persons, by and through his undersigned counsel, alleges upon personal knowledge as to himself and upon information and belief as to other matters (which is based on, among other things, his experiences at Defendants' facilities, review of Defendants' records, conversations with Defendants' employees and investigation of his counsel), as follows:

## NATURE OF ACTION

1.      Plaintiff brings this action on behalf of himself and all other similarly situated current and former hourly paid and non-exempt employees ("Hourly Employees") of AllPro Parking, LLC, AllPro Parking Holdings, LLC (together with AllPro Parking, LLC, "All Pro"), and Premium Partner Holdings, LLC ("Premium Partner") (collectively, "Defendants").

2.      AllPro provides parking services throughout New York, Pennsylvania, and Ohio. More specifically, AllPro provides, *inter alia*, daily transient, monthly and special event parking services to a variety of public and private entities in these states.

3.      In or around September 2022, Premium Partner, which is the holding company for various Premium Parking entities across the United States, acquired an 80% ownership interest in

AllPro and, as further discussed below, is a joint employer of Plaintiff and the Hourly Employers under applicable labor law.

4.      Defendants have approximately 1,000 current Hourly Employees.

5.      As particularized below, Defendants have engaged in illegal and improper wage practices that have deprived Hourly Employees of millions of dollars in wages and overtime compensation.  These practices include (a) improperly compensating Hourly Employees based only upon their scheduled hours rather than the actual time they worked; and (b) automatically deducting time for meal breaks when employees are performing work during that time. Furthermore, Defendants failed to provide Hourly Employees with appropriate pay rate acknowledgement forms and weekly wage statements.  These illegal practices and policies are uniform throughout all of Defendants' locations and have been known to Defendants for years.

6.      For these reasons, Plaintiff brings this action on behalf of himself and other Hourly Employees to recover unpaid wages, overtime compensation, damages, penalties and reasonable attorneys' fees and costs under the Fair Labor Standards Act (the "FLSA") §§ 201, *et seq.*, and under McKinney's Labor Law (the "NYLL"), §§ 190, *et seq.*, 195(1), 195(3), §§ 650, *et seq.*, and 12 NYCRR § 142-2.2.

## JURISDICTION AND VENUE

7.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, the FLSA, 29 U.S.C. § 216(b).

8.      This Court has original jurisdiction over all claims in this action under the Class Action Fairness Act ("CAFA") 28 U.S.C. § 1332(d).  This is a proposed class action in which: (a) there are 100 or more members in the proposed class; (b) at least some members of the proposed class have a different citizenship from the Defendants; and (c) the claims of the proposed class

members exceed $5,000,000.00 in the aggregate.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the NYLL state law wage and hour claims because those claims derive from a common nucleus of operative fact.

10.     This Court has personal jurisdiction over AllPro Parking, LLC and AllPro Parking Holdings, LLC as both entities are organized and existing under the laws of the State of New York, with their principal places of business located in New York, and regularly transact business in the State of New York.  Additionally, Plaintiff's causes of action arise out of All Pro's conduct in the State of New York.

11.     This Court has personal jurisdiction over Premium Partner as Plaintiff's causes of action against Premium Partner arise out of and relate to Premium Partner's systemic and continuous contacts with the forum state, including its majority ownership interest in All Pro. Premium Partner has purposefully availed itself of the privilege of conducting activities within this District, including acquiring a majority ownership interest in All Pro, such that maintenance of this action against Premium Partner in this District does not offend traditional notions of fair play and substantial justice.

12.     Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (2) because a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## THE PARTIES

### Plaintiff

13.     Plaintiff, Dwayne Boone, is currently a resident of Buffalo, New York and is a current employee of Defendants.

14.     Mr. Boone has been employed by AllPro since September 22, 2017, as an Hourly Employee and paid an hourly rate between $13.85 and $15.95.  After Premium Partner acquired a majority ownership interest in AllPro in or around September 2022, Plaintiff's facility changed from AllPro to Premium Parking; however, Plaintiff continued to perform the same job functions and was subject to the same compensation policies and practices.  In fact, after Premium Partner acquired AllPro, Plaintiff received a notification from AllPro announcing the transition of his job site to a Premium Parking facility, which stated, in pertinent part, that "Premium plans to offer continued employment to Allpro's existing operational employees."

15.     Mr. Boone was initially employed by AllPro as a part-time ticket auditor.  However, shortly after his hiring, Mr. Boone began working for AllPro as a full-time lot attendant, a role which he still holds to this day for Defendants.

16.     Since approximately September 2019, Mr. Boone was generally scheduled to work from 8:00 a.m. until 5:30 p.m., 5 days per week.  His job duties as a lot attendant include, among other tasks: (a) cleaning and maintaining the parking lot; (b) assisting customers with payment and other issues; and (c) maintaining and operating the various machines on site.

17.     As a lot attendant, Mr. Boone cannot exercise independent discretion, judgment or control over the daily and overall operation of the areas in which he works.  Mr. Boone cannot hire or fire other Hourly Employees. Mr. Boone also cannot pick and choose a particular post to patrol during any of his given shifts, but rather is assigned a particular post by his supervisors.  Despite this lack of independent discretion, throughout the entirety of his employment as a lot attendant, Mr. Boone was not properly compensated for all hours worked.

18.     Specifically, throughout Mr. Boone's employment, he was asked to and did perform essential work prior to the beginning of his scheduled shift as well as subsequent to the

end of his scheduled shift.

19.     When Mr. Boone first began working at AllPro, he was required to clock in and clock out at the start and end of each workday. However, regardless of the number of hours which Mr. Boone actually worked, he was only compensated according to his scheduled time.

20.     Sometime on or around September 19, 2020, Mr. Boone was no longer provided with the ability to clock in and clock out from his work site. Since this change occurred, AllPro has simply paid Mr. Boone in accordance with his scheduled time and without any regard to the time which Mr. Boone actually performs work.   Regardless of whether Mr. Boone and other Hourly Employees are required to clock in and out utilizing electronic timekeeping or whether Mr. Boone and other Hourly Employees did not clock in and out, Plaintiff and all Hourly Employees were not properly compensated for all hours worked.   Rather, Plaintiff and all Hourly Employees are paid only based on their scheduled hours rather than the actual hours worked.

21.     By way of example of Defendants' improper schedule-based procedures, on most days throughout the course of his employment, Mr. Boone would typically arrive to work between 10 to 15 minutes prior to the start of his scheduled shift and immediately began performing job-related duties, but he was only compensated as if he began work at 8:00 a.m. Additionally, on those same occasions, Mr. Boone would typically work approximately 30 minutes beyond the end of his scheduled shift. However, he was compensated as if he ceased working at 5:30 p.m. (*i.e.*, the end of his scheduled shift).

22.     As a result, on these days, Mr. Boone worked but was not compensated for at least 30-45 minutes because of Defendants' improper schedule-based pay practices and procedures.

23.     Mr. Boone was engaged in essential and integral work on the Defendants' behalf during this and all other pre- and post-shift periods in which he was working but not compensated.

Work performed during the pre- and post-shift periods include some or all the job duties referenced *supra*. This pre- and post-shift work was significant, integral and indispensable to the performance of job-related duties, was not a *de minimis* task or request, and was predominantly for the Defendants' benefit.

24.     This pre/post shift work occurred 4-5 times per week for anywhere between 30-45 minutes per day.

25.     Furthermore, Mr. Boone and Hourly Employees would routinely not be relieved for their uncompensated meal breaks or would be interrupted during same. Thus, Mr. Boone routinely had to perform work during his 30-minute meal break, but was not compensated for this time. Work performed during uncompensated meal breaks includes those duties described, *supra.*

26.     By way of specific example, during the pay period of July 25, 2022 to July 31, 2022, Mr. Boone began work approximately 10-15 minutes before the start of his scheduled shift and ceased working approximately 20-30 minutes after the end of his scheduled shift each day that he worked. Mr. Boone also had his uncompensated meal break interrupted by approximately 15-20 minutes per day. Despite working from approximately 7:45 a.m. to 6:00 p.m., with little-to-no meal break time, 5 days per week, Mr. Boone was only paid for 45 hours over the course of this 1-week pay period and was only provided 5 hours of overtime pay. However, during this 1-week period, Mr. Boone actually worked between 48.75 hours and 51.25 hours and was not paid any additional straight or overtime wage for these additional 3.75-6.25 hours of overtime during that 1-week period.

27.     Moreover, during the time that Mr. Boone and Hourly Employees did not utilize electronic time keeping, they all still worked the same or similar number of hours, but were only paid according to their pre-scheduled hours. This schedule-based pay was done, despite Plaintiff's

and Hourly Employees' managers and supervisors having knowledge that such uncompensated work occurred.

28.     Specifically, a supervisor with knowledge included, but is not limited to, Erik Reed. Mr. Reed knew Mr. Boone was performing work before and after his scheduled shifts, as well as during meal breaks, but did nothing to rectify the situation or compensate Mr. Boone for his time.

29.     Thus, because of Defendants' improper compensation policies, and as described more fully below, Mr. Boone and all other Hourly Employees were deprived of wages as required by the FLSA and NYLL, including at least 3.75-6.25 hours of uncompensated overtime per week.

30.     Finally, Defendants never provided Mr. Boone with proper pay rate acknowledgement forms at the commencement of his employment and when he received a change in his hourly rate of pay as required under NYLL §195(1), nor was he provided with appropriate weekly wage statements as required by NYLL §195(3).

**Defendants**

31.     AllPro is a privately held company conducting business in the Western District of New York.   AllPro was established and incorporated under the laws of New York and is headquartered in New York at 465 Washington Street, Suite 105, Buffalo, New York, 14203.

32.     AllPro provides, *inter alia*, daily transient, monthly and special event parking services to a variety of public and private entities in upstate New York and the Midwest and have approximately 1,000 current Hourly Employees.

33.     Premium Partner is a holding company, organized under the laws of the State of Louisiana, created to possess the shares of various Premium Parking entities operating across the United States.

34.     In or around September 2022, Premium Partner acquired an 80% ownership interest

in AllPro.  According to Premium Partner's website, the "transaction combines two leaders in parking management, aligning Allpro's operational expertise, strong leadership and community-minded service with Premium's full-stack, customer-first technology."  Premium Partner has further declared that as a result of the acquisition of a majority stake in AllPro, "Premium will integrate 130 Allpro locations across three states and twelve vibrant markets, including Buffalo, Cleveland, Columbus, Cincinnati, Rochester, Pittsburgh, and Syracuse."

35.     After Premium Partner acquired a majority ownership interest in AllPro, Plaintiff's facility was transitioned to a Premium Parking facility, which Premium Partner serves as the holding company of.

36.     To this end, on November 9, 2022, Plaintiff received a notification announcing the transition of his job site to a Premium Parking facility, which stated, in pertinent part, that "Premium plans to offer continued employment to Allpro's existing operational employees."

37.     As set forth in the November 9, 2022 announcement to AllPro employees, upon Premium Partner's acquisition of AllPro, the former individual owner of AllPro, Rick Serra, became a Premium Partner Vice President, responsible for overseeing AllPro's existing operations and future growth opportunities.

38.     The compensation policies of Defendants are centrally and collectively dictated, controlled, and ratified.  Additionally, Defendants have the power to control wage policies and practices of Plaintiff and Hourly Employees through their oversight of day-to-day operating procedures, control over Hourly Employee work schedules, ability to determine Hourly Employees' rate of pay, and ability to control record-keeping practices. Thus, Defendants are the joint employers of Plaintiff and class members within the meaning of the FLSA and NYLL and are one and the same for the purposes of federal and state labor law liability.

## FACTUAL ALLEGATIONS

**Background**

39.     Defendants have approximately 1,000 current Hourly Employees.  Defendants'
Hourly Employees are, upon information and belief, spread across upstate New York and the
Midwest region, serving in a variety of roles to fulfill Defendants' business purposes.

40.     Defendants hired Plaintiff and promised to pay hourly wages for his work.  Full-
time Hourly Employees are paid hourly wages based upon their job description and tenure that
range between minimum wage and approximately $25.00 per hour and have a standard work week
of 40 hours.

41.     Defendants' improper schedule-based pay procedures apply to all Hourly
Employees, regardless of whether they clock in and clock out each day.

42.     Defendants' management personnel know that Hourly Employees are only
compensated for pre-approved and pre-scheduled hours and that Hourly Employees will not be
compensated for all hours worked.

43.     Regardless of whether Plaintiff or Hourly Employees utilized time clocks or not,
they were paid according to their scheduled hours, regardless of when they were actually
performing work. Managers and supervisors had knowledge that Hourly Employees were
performing additional uncompensated work outside of their scheduled hours, but did nothing to
account for this unpaid time.

**Defendants Failed To Provide Plaintiff and Hourly Employees With Timely
And Appropriate Wage Statements and Pay Rate
Acknowledgement Forms As Required Under NYLL**

44.     Defendants failed to provide Plaintiff and all other Hourly Employees with wage
statements at the time of payment of wages, containing: the dates of work covered by that payment

of wages; names of the employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

45.     Defendants failed to provide Plaintiff and all other Hourly Employees at the time of hiring and when they received a change in their hourly rate of pay, a statement in English and the Hourly Employees' primary language, containing: the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission or other; allowances, if any, claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employers' main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

46.     Accordingly, Plaintiff seeks certification of the following classes of Hourly Employees:

> All Hourly Employees who are or were employed by Defendants within the three years (FLSA Collective) or six years (New York Class) preceding the filing of this action and who were: (a) not properly compensated for all work performed for Defendants, including for work performed prior to the start of their scheduled shifts or after the conclusion of their scheduled shifts; and/or (b) were required to work during some or all of their uncompensated meal breaks, but were not compensated for this time; and/or (c) were not fully compensated for time worked over forty hours per week at overtime rates; and/or (d) not provided proper notice under NYLL §195(1) and NYLL §195(3) ("FLSA Collective" and "New York Class").

## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION ALLEGATIONS

47.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

48.     Plaintiff brings this FLSA collective action on behalf of himself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, on behalf of the aforementioned FLSA Collective.

49.     Excluded from the FLSA Collective are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the FLSA Collective.

50.     Plaintiff is unable to state the exact number of Hourly Employees within the FLSA Collective without discovery of Defendants' books and records but estimates that the FLSA Collective exceeds 1,000 individuals.

51.     Defendants improperly benefited from Plaintiff's and the FLSA Collective members' uncompensated work.

52.     Defendants' unlawful conduct has been widespread, repeated and consistent. Moreover, Defendants' conduct was willful and in bad faith and has caused significant damages to Plaintiff and the FLSA Collective.

53.     Defendants are liable under the FLSA for failing to properly compensate Plaintiff and the FLSA Collective, and, as such, notice should be sent to the FLSA Collective.  There are numerous similarly situated, current and former Hourly Employees who have been denied wages in violation of the FLSA who would benefit from the issuance of a Court-supervised notice of the present lawsuit and the opportunity to join in the action.  Those similarly situated Hourly Employees are known to Defendants and are readily identifiable through Defendants' records.

## NEW YORK CLASS ACTION ALLEGATIONS

54.     The preceding paragraphs are incorporated by reference as if fully set forth herein.

55.     Plaintiff brings this action on his own behalf and as a class action pursuant to Article 9 of New York Civil Practice Law and Rules on behalf of the aforementioned New York Class.

56.     Excluded from the New York Class are Defendants, their legal representatives, officers, directors, assigns, and successors, or any individual who has or had a controlling interest in Defendants.  Also excluded are persons and entities who submit timely and otherwise proper requests for exclusion from the New York Class.

57.     Defendants operate and manage a regional parking services company, employing over 1,000 Hourly Employees in New York and systematically fails and refuses to pay their Hourly Employees for all compensable hours worked.  The members of the New York Class are so numerous that joinder of all members in one proceeding is impracticable.

58.     Plaintiff's claims are typical of the claims of other New York Class members because Plaintiff is a non-exempt hourly-wage Hourly Employee who has not been compensated for work performed at the employer's request both before his scheduled shift and after the conclusion of his scheduled shift and during uncompensated meal breaks.

59.     Plaintiff and other New York Class members have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.  Plaintiff and other New York Class members have been injured in that they have been uncompensated or under-compensated due to Defendants' common policies, practices, and patterns of conduct.

60.     Plaintiff will fairly and adequately protect the interests of the New York Class. Plaintiff has retained counsel competent and experienced in complex class action and wage and hour litigation.  There is no conflict between Plaintiff and the New York Class.

61.     Common questions of law and fact exist as to the New York Class that predominate over any questions solely affecting them individually and include, but are not limited to, the following:

(a)     Whether Defendants failed and/or refused to pay Plaintiff and the New York Class for all of the compensable time that they worked for Defendants while before and/or after the start of their scheduled shifts;

(b)     Whether Defendants failed to keep true and accurate time records for all hours worked by its Hourly Employees as required by New York Labor Law §§ 190 *et seq.* and 650 *et seq.*;

(c)     Whether Defendants failed to provide appropriate and accurate pay rate acknowledgement forms and weekly wage statements as required by New York Labor Law §§ 195(1) and 195(3);

(d)     Whether Defendants correctly compensated members of the New York Class for hours worked in excess of forty per workweek;

(e)     Whether Defendants failed to comply with the posting and notice requirements of the NYLL;

(f)     Whether Defendants engaged in a pattern and/or practice in New York of forcing, coercing, and/or permitting Plaintiff and New York Class members to perform work for Defendants' benefit which was not compensated;

(g)     Whether Defendants' policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

(h)     The nature and extent of class-wide injury and the measure of damages for those injuries.

62.      Class action treatment is superior to any alternatives for the fair and efficient adjudication of the controversy alleged herein.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would entail.  Individual class members' damages are inadequate to justify the costs of prosecuting their claims in any manner other than a class action.  No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.  Members of the New York Class are readily identifiable from Defendants' own records.

63.      Prosecution of separate actions by individual members of the New York Class would create the risk of inconsistent or varying adjudications with respect to individual members of the New York Class that would establish incompatible standards of conduct for Defendants.

64.      Without a class action, Defendants will retain the benefit of their wrongdoing and will continue a course of action that will result in further damages to Plaintiff and the New York Class.

65.      Plaintiff intends to send notice to all members of the New York Class to the extent required by New York C.P.L.R. § 904.

**<u>FIRST CAUSE OF ACTION</u>**

**VIOLATION OF THE FAIR LABOR STANDARDS ACT**
**(On Behalf of Plaintiff and the FLSA Collective)**

66.      The preceding paragraphs are incorporated by reference as if fully set forth herein.

67.      At all relevant times, Defendants have been, and continue to be, an "employer" engaged in interstate commerce and/or in the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Defendants have employed and

continue to employ, Hourly Employees, including Plaintiff and each of the members of the FLSA Collective.

68.     Plaintiff consents in writing to be a part of this action pursuant to FLSA, 29 U.S.C. § 216(b), and attached hereto as Exhibit A is a copy of Plaintiff's Opt-in forms.  As this case proceeds, it is likely that other individuals will sign consent forms and join as plaintiffs and opt-ins.

69.     The FLSA requires each covered employer such as Defendants to compensate all non-exempt Hourly Employees at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours per workweek.  The FLSA also requires each covered employer to pay the minimum wage for all hours worked.

70.     Plaintiff and the members of the FLSA Collective Action were and are entitled to be paid minimum wage and overtime compensation for all hours worked.

71.     Defendants, pursuant to their policies and practices, failed and refused to pay minimum wage and overtime premiums to Plaintiff and the members of the FLSA Collective for all of their hours worked.

72.     By failing to compensate Plaintiff and the members of the FLSA Collective for minimum wage and overtime compensation, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. § 201, *et seq*.

73.     By only paying FLSA Collective members based on their scheduled shifts, rather than the time spent working, Defendants have violated, and continue to violate the FLSA.

74.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

75.     Plaintiff, on behalf of himself and members of the FLSA Collective, seeks damages

in the amount of their unpaid wages and overtime compensation, interest, and such other legal and equitable relief as the Court deems just and proper.

76.     Plaintiff, on behalf of himself and the FLSA Collective, seeks recovery of attorneys' fees and costs, to be paid by Defendants, as provided by the FLSA, 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION

**Violations of New York Labor Law – Nonpayment of Straight Wages**
**§§ 190 *et seq.* and 650 *et seq.* and 12 NYCRR 142-2.1 and 142-2.2**
**(On Behalf of Plaintiff and the New York Class)**

77.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

78.     Pursuant to New York Labor Law §§ 190, 191, 193, 198 and 652, Defendants have willfully failed to pay the straight wages due as set forth in the preceding paragraphs of this Complaint to Plaintiff and the New York Class in violation of New York Labor Law §§ 190, 191, 193, 198 and 652 and 12 N.Y.C.R.R. 142-2.1 and 142-2.2.

79.     Defendants were not and are not permitted by state or federal law, or by order of a court of competent jurisdiction, to withhold or divert any portion of the Plaintiff's and the New York Class' wages that concern this lawsuit.

80.     Defendants were not authorized by Plaintiff or any New York Class members to withhold, divert or deduct any portion of their unpaid wages which are the subject of this lawsuit.

81.     Pursuant to New York Labor Law § 198, employers such as Defendants who intentionally fail to pay an Hourly Employee wages in conformance with New York Labor Law shall be liable to the Hourly Employee for the wages or expenses that were intentionally not paid, and court costs and attorneys' fees incurred in recovering the unpaid wages.

82.     Defendants have violated the New York Labor Law by failing to pay Plaintiff and

the members of the New York Class for all compensable time and by failing to pay Plaintiff and the members of the New York Class for the straight time worked at the established rate.

83.     Plaintiff, on behalf of himself and the New York Class, seeks the amount of underpayments based on Defendants' failure to pay straight wages of at least the minimum wage for all hours worked, as provided by the New York Labor Law, and such other legal and equitable relief as the Court deems just and proper.

84.     Plaintiff, on behalf of himself and the New York Class, seeks all liquidated and punitive damages and penalties available under the NYLL.

### **THIRD CAUSE OF ACTION**

**New York Labor Law – Unpaid Overtime**
**(On Behalf of Plaintiff and the New York Class)**

85.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

86.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations 12 N.Y.C.R.R. 142-2.1 and 142-2.2 apply to Defendants and protect Plaintiff and the members of the New York Class.

87.     Defendants have failed to pay Plaintiff and members of the New York Class overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations.

88.     By Defendants' knowing and/or intentional failure to pay Plaintiff and the members of the New York Class overtime wages for hours worked in excess of forty hours per week, they have willfully violated NYLL Article 19, §§ 650 *et. seq.*, and the supporting New York State Department of Labor Regulations.

89.     Due to Defendants' violations of the NYLL, Plaintiff and the members of the New

York Class are entitled to recover from the Defendants their unpaid overtime wages, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

90.     Plaintiff, on behalf of himself and the New York Class seeks all liquidated and punitive damages and penalties available under the NYLL.

## FOURTH CAUSE OF ACTION

### New York Labor Law – Violation of the Notice and Recordkeeping Requirements
### (On Behalf of Plaintiff and the New York Class)

91.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

92.     Defendants have failed to provide Plaintiff and all Hourly Employees with a written notice, in English and in Spanish, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

93.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

### New York Labor Law – Violation of the Wage Statement Provisions
### (On Behalf of Plaintiff and the New York Class)

94.     The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

95.     Defendants have not provided Plaintiff and all Hourly Employees a statement with each payment of wages listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked, as required by NYLL 195(3).

96.     Defendants are liable to Plaintiff and each Hourly Employee in the amount of $5,000, together with costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Dwayne Boone, individually and on behalf of the FLSA Collective, seeks the following relief:

A.     Designation of this action as a collective action on behalf of the FLSA Collective (asserting FLSA claims) and prompt issuance of notice pursuant to 29 U.S.C. §216(b) to all similarly situated members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Plaintiff Consent Forms pursuant to 29 U.S.C. § 216(b);

B.     Designation of Plaintiff Dwayne Boone as the Representatives of FLSA Collective;

C.     Appointment of Plaintiff's counsel as Lead Counsel for the FLSA Collective;

D.     An award of damages, according to proof, including but not limited to unpaid overtime wages and lost benefits, to be paid by the Defendants;

E.     An award of costs incurred herein, including expert fees;

F.      An award of attorneys' fees pursuant to 29 U.S.C. § 216;

G.      An award of pre-judgment and post judgment interest, as provided by law;

H.      An award of injunctive relief to prevent against future wage and hour violations; and

I.      All such other relief as this Court shall deem just and proper.

**WHEREFORE**, Plaintiff Dwayne Boone, individually and on behalf of the New York Class, seek the following relief:

A.      Certification of this action as a class action under Rule 23 and the appointment of Plaintiff's counsel as Lead Counsel for the New York Class;

B.      Designation of Plaintiff Dwayne Boone as the Representative of New York Class;

C.      On the Second Cause of Action (Violation of New York Labor Law – Nonpayment of Straight Wages):

   1.      An award to Plaintiff and members of the New York Class of damages for the amount of unpaid straight wages in addition to interest subject to proof;

   2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law;

D.      On the Third Cause of Action (Violation of New York Labor Law – Unpaid Overtime):

   1.      An award to Plaintiff and the members of the New York Class of damages for the amount of unpaid overtime, in addition to interest subject to proof; and

   2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to New York Labor Law.

E.      On the Fourth and Fifth Causes of Action (Violation of New York Labor Law –

Notice and Recordkeeping Requirements and Wage Statement Provisions):

1.      An award to Plaintiff and members of the New York Class of damages for violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d).

2.      An award to Plaintiff and the members of the New York Class of reasonable attorneys' fees and costs pursuant to NYLL §§198(1-b), 198(1-d).

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## DEMAND TO PRESERVE EVIDENCE

Defendants are hereby directed to preserve all physical and electronic information pertaining in any way to Plaintiff and Plaintiff's employment, to Plaintiff's cause of action and/or prayers for relief, and to any defenses to same, including, but not limited to, electronic data storage, closed circuit TV footage, digital images, computer images, cache memory, searchable data, emails, spread sheets, employment files, memos, text messages, any and all online social or work related websites, entries on social networking sites (including, but not limited to, Facebook, Twitter, MySpace, etc.), and any other information and/or data and/or things and/or documents which may be relevant to any claim or defense in this litigation.

## NOTICE PURSUANT TO NEW YORK BUSINESS CORPORATIONS LAW § 630

Defendants are hereby put on notice that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, they are hereby notified that Plaintiff, the FLSA Collective Class and the New York Class intend to charge and hold personally, jointly and severally liable, the ten largest shareholders of AllPro, for all debts, wages, and/or salaries due and

owing to Defendants' employees for services performed by them and Plaintiff has expressly authorized the undersigned, as his attorney, to make this demand on her behalf.

Dated: New York, New York
        November 10, 2022

McLAUGHLIN & STERN, LLP

By: _____
        Brett Gallaway, Esq.
        Lee Shalov, Esq.
        Jason Giaimo, Esq.
        Charles Kellett, Esq.
260 Madison Ave.
New York, NY 10016
Telephone: (212) 448-1100
bgallaway@mclaughlinstern.com
lshalov@mclaughlinstern.com
jgiaimo@mclaughlinstern.com
ckellett@mclaughlinstern.com

*Attorneys for Plaintiff, the FLSA Collective and the New York Class*